LATINO ISSUES FORUM; Medical Advocates for Healthy Air; Sierra Club, Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent,

San Joaquin Valley Unified Air Pollution Control District; Air Coalition Team, Respondents–Intervenors.

Latino Issues Forum; Medical Advocates for Healthy Air; Sierra Club, Petitioners,

v.

United States Environmental Protection Agency, Respondent,

San Joaquin Valley Unified Air Pollution Control District; Air Coalition Team, Respondents–Intervenors.

Nos. 06–75831, 08–71238.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 2009.

Filed March 2, 2009.

Paul Cort, Erin M. Tobin, Earthjustice, Oakland, CA, for Petitioners.

David Aiken Carson, Esquire, Senior Trial, U.S. Department of Justice, Denver, CO, Stephen L. Johnson, Esquire, U.S. Environment Protection Agency, Washington, DC, Nancy J. Marvel, Esquire, U.S. Environmental Protection Agency, San Francisco, CA, for Respondent.

Catherine T. Redmond, Esquire, San Joaquin Valley Unified Air Pollution Control District, Fresno, CA, Jan L. Kahn, Esquire, Rissa Ann Stuart, Esquire, Kahn Soares & Conway, LLP, Hanford, CA, for Respondents–Intervenors.

Before SCHROEDER, CANBY and HAWKINS, Circuit Judges.

These consolidated petitions for review challenge the Environmental Protection

Agency's determination that the San Joaquin Valley of California is in compliance with Clean Air Act standards for PM–10. The petitioners are the Latino Issues Forum and other non-profit groups concerned with the quality of the environment in central California. The Agency's final action was published in March of 2008. 73 Fed.Reg. 14687 (Mar. 19, 2008).

Our review is under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), and is limited to considering whether the action of the EPA was arbitrary or capricious. There are before us no issues of law requiring statutory or regulatory interpretation.

The petitioners' principal contention is that the Agency acted arbitrarily or capriciously in determining that two "exceedances" of the PM–10 standard reflected in monitors at Bakersfield, Oildale, and Corcoran were caused by "exceptional events" within the meaning of 42 U.S.C. § 7619(b). The petitioners submitted various objections and alternative scientific bases to show that the exceedances were not "exceptional events," i.e., beyond the control of those charged with reducing air pollution. The EPA explained the reasons why it was relying on its own scientific data and modeling formulas to determine that unusually high winds caused the exceedances. Its explanation was not arbitrary or capricious.

This court owes deference to the EPA in the choice of scientific method that is within its own expertise. *Ass'n of Irritated Residents v. EPA,* 423 F.3d 989, 997 (9th Cir.2005). The petitioners submitted an affidavit of a scientist who disagreed with the methodologies of the EPA, but the Agency took his view into account when it reviewed all of the scientific evidence before issuing its final determination that these exceedances were caused by "exceptional events." The existence of scientific disagreement is not a basis for concluding that an agency acted irrationally in choosing one view over another. *See Bear Lake Watch, Inc. v. FERC,* 324 F.3d 1071, 1076–77 (9th Cir.2003); *Cent. Ariz. Water Consol. Dist. v. EPA,* 990 F.2d 1531, 1540 (9th Cir.1993).

Petitioners also dispute the EPA's handling of exceedances recorded on a monitor located on the tribal reservation, known as the Santa Rosa Rancheria monitor. The exceedances recorded there were apparently caused by construction activity of a temporary nature. The EPA reasonably determined because the exceedances were the result of an "exceptional event," they were not likely to recur. Petitioners seem to quarrel with the EPA's description of the type of construction activity being undertaken, but do not seriously dispute that construction was ongoing during the period that the monitors were in operation and recording exceedances of the PM–10 standard. We therefore cannot say that the EPA's conclusion that construction activities caused the exceedances was arbitrary or capricious.

Finally, petitioners challenge the interim application of the "Clean Data Policy" to the San Joaquin Valley before it was formally redesignated as an attainment area for PM–10. The Clean Data Policy expressly applies to areas currently attaining ozone and PM–2.5 standards, but there is no similar written regulation governing areas attaining PM–10 standards. It was not unreasonable, however, for the EPA to apply the policy to an area that was currently attaining the PM–10 standards. As the EPA rationally explained, if an area is in compliance with PM–10 standards, then further progress for the purpose of ensuring attainment is not necessary.

The petitions are **DENIED.**